## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN O. SHELLHAMER, Jr., | : | No. 3:04cv1440 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| JOANNE B. BARNHART, *Commissioner* | : | |
| *of Social Security*, | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Presently before the Court for disposition are Plaintiff John O. Shellhamer Jr.'s objections to Magistrate Judge Thomas M. Blewitt's Report and Recommendation. The Report and Recommendation proposes that we deny Plaintiff's appeal of Commissioner Joanne B. Barnhart's decision to deny his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33. The parties have fully briefed this matter and it is ripe for disposition. For the reasons that follow, we will overrule Plaintiff's objections and adopt the Report and Recommendation.

### I.     Background

#### A.     Procedural History

On November 26, 2002, Plaintiff filed his application for DIB and SSI, alleging that his medical condition rendered him unable to work beginning on August 2, 2002. He alleged that he could not work because he has diabetes mellitus and arterial bypass in his left leg. He also has peripheral vascular disease and degenerative spondylosis of the thoracolumbar spine. (R. 75, 17). The Commissioner initially denied the claims, and an Administrative Law Judge ("ALJ") subsequently held a hearing on February 19, 2003. The ALJ denied Plaintiff's claim

on April 22, 2004.  (R. 11-18).  This decision was the Commissioner's final decision.

### B.     Medical History

Plaintiff was born on February 4, 1961, and was 43 years old at the time of his hearing. (R. 190).  He completed his GED, and has past relevant work as a truck shop manager, mechanic, fork lift driver, and warehouseman.  (R. 191, 206).

Plaintiff has a history of diabetes and circulatory impairments.  (R. 96, 110).  He underwent a left femoral popliteal bypass graft on February 2, 2000 to treat a blood clot.  (R. 110, 129).  Throughout his work history, he missed work for a variety of ailments, including back pain.  (R. 102).  An X-ray in August 2002 showed moderate degenerative spondylosis of the thoracolumbar spine.  (R. 101).  Dr. Samuels, a neurologist, examined Plaintiff in September 2002 and diagnosed him with possible right lumbar radiculopathy, and peripheral neuropathy, possibly secondary to his diabetes.  (R. 156).  A subsequent MRI revealed scar tissue around a nerve in his lower back.  (R. 127).  An EMG in November 2002 revealed absent superficial peroneal bilateral sensory nerve action potential, peripheral neuropathy, and right radiculopathy.  (R. 120-21).

In January 2003, Plaintiff visited the Carlisle Hospital Sadler Clinic complaining of circulatory problems.  (R. 93).  Dr. Joseph Campbell, a vascular surgeon, found that he has arterial occlusive disease bilaterally.  (R. 107).  He found no limb threatening ischemia, and he did not recommend surgery.  (Id.).  He further found him "certainly" capable of sedentary work. (Id.).

On March 31, 2003, Dr. Leland Patterson, a state agency physician, evaluated Plaintiff and performed a residual functional capacity analysis.  (R. 136-45).  He determined that

2

Plaintiff was not disabled and was capable of performing a full range of sedentary work. (R. 145). In November 2003, Dr. Siguenza reported that Plaintiff was disabled due to neuropathy and back pain. (R. 151). In February 2004, Plaintiff visited the emergency room complaining of lower back pain and Dr. Ted Kosenske observed that his complaints of pain were inconsistent with his pathology. (Id.).

## II.   Standard of Review

In disposing of objections to a magistrate's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)©); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions. Id.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is less than a preponderance of the evidence, but more than a mere scintilla. Id.

## III.   Disability Definition

"Disability" is defined in the Social Security Act in terms of the effect a physical or mental impairment has on a person's ability to perform in the workplace. In order to receive disability benefits, a claimant must establish that he is unable "to engage in any substantial

3

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of less than 12 months." 42 U.S.C.A. § 423(d)(1)(A). The Act further provides that a person must "not only [be] unable to do his previous work but [must be unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 459-60 (1983).

In the analysis of disability claims, the Commissioner employs a five-step sequential evaluation. 20 C.F.R. § 416.920. The initial three steps are as follows: 1) whether the applicant is engaged in substantial gainful activity; 2) whether the applicant has a severe impairment; 3) whether the applicant's impairment meets or equals an impairment listed by the Secretary of Health and Human Services as creating a presumption of disability. If the claimant cannot establish step three, he must demonstrate: 4) that the impairment prevents the applicant from doing past relevant work. See 20 C.F.R. §§ 404.1520, 416.920. If the applicant establishes steps one through four, then the burden is on the Commissioner to demonstrate the fifth step; that there are jobs in the national economy that the claimant can perform. Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995).

**IV.   ALJ/Magistrate Decision**

The ALJ found that Plaintiff has diabetes mellitus with bilateral lower extremity claudication secondary to peripheral vascular disease. (R. 13). He found that this condition

4

does not meet or equal the impairments in section 9.08, 1.04, and 1.00B2b, and thus does not create a presumption of disability. (R. 14).

Next, he found that the Plaintiff retained the residual functional capacity to perform unskilled sedentary work with a sit/stand option every 30 to 60 minutes, requiring no precise attention to detail. (R. 15). In arriving at this conclusion, he considered Plaintiff's symptoms as well as the objective evidence supporting his complaints of pain, and found that Plaintiff's complaints of pain were not supported by the objective medical evidence. (R. 14). He noted that Dr. Campbell found Plaintiff "certainly" capable of sedentary work. (Id.). He afforded significant weight to this opinion because Dr. Campbell is a specialist in vascular surgery and is Plaintiffs's treating physician. (R. 15). Furthermore, Dr. Kosenske found that Plaintiff's complaints were inconsistent with the objective clinical findings. (Id.). He found that although Plaintiff reports limited daily activity, these claims were excessively restrictive when viewed in light of the record on the whole. (Id.). He further noted that Plaintiff was not compliant with recommendations to cease smoking and to increase exercise to control his diabetes. (Id.).

Additionally, he found Plaintiff's credibility undermined by his claims that he when he was employed, his condition prevented him from working seven to nine days in a row, and caused him to miss one to two days a week. (R. 15). The ALJ found this claim completely unfounded, as Plaintiff's work records established that despite his condition he worked full time, with few pay periods less than 80 hours, and frequently received overtime pay. (Id.). The ALJ also found that Plaintiff had a disincentive to work to avoid paying child support. (Id.).

He observed that the state agency assessment found that Plaintiff has the residual

functional capacity to perform a range of sedentary work. (Id.). He afforded great weight to this assessment because it was consistent with the objective medical findings. (Id.).

Based on Plaintiff's restrictions, a vocational expert testified that he can perform jobs that exist in significant numbers in the national economy. (R. 16). Specifically, he could work as a file clerk, receptionist, and general clerical worker. (Id.). Thus, the ALJ denied benefits.

**V.     Discussion**

The magistrate's report and recommendation proposes that we uphold the ALJ's decision. Plaintiff presents four objections.[1] First, he objects to the ALJ's decision to afford greater weight to Dr. Campbell's opinion than Dr. Siguenza's. Second, he objects to the finding that his condition did not meet the medical listings for diabetes or peripheral artery disease. Third, he objects to the vocational expert's testimony because it was inconsistent with the Dictionary of Occupational Titles. Finally, he objects to the ALJ's finding that his complaints lacked credibility. We will address these objections separately, and for the reasons that follow, will overrule each one.

**A.     The Physician's Opinions**

Plaintiff argues that the ALJ should not have given Dr. Campbell's opinion controlling weight with regards to his peripheral neuropathy, radicuopathy, or moderate degenerative spondylosis because these conditions are beyond Dr. Campbell's area of expertise. He also argues that Dr. Campbell's opinion was not accompanied by a residual functional capacity evaluation or a discussion of specific limitations.

---

[1] Plaintiff's brief lists five objections, but two of these objections address the ALJ's acceptance of Dr. Campbell's opinion and rejection of Dr. Siguenza's. We will address this issue as one objection.

6

We find no error in the ALJ's and the Magistrate's treatment of Dr. Campbell's opinion. As a treating physician, his opinion is due greater weight than that of a physician who has examined the claimant as a consultant. See, e.g., Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993). The ALJ must weigh the relative worth of the treating physician's opinion with the reports of the consulting physicians. Wright v. Sullivan, 900 F.2d 675, 683 (3d Cir. 1990). We find that the ALJ appropriately weighed the conflicting opinions. He properly noted that Dr. Campbell's opinion is due greater weight because he is a treating physician. Furthermore, he properly rejected Dr. Siguenza's report, which consisted of an Employability Assessment Form finding Plaintiff permanently disabled.[2] He noted that this report was made for the purposes of determining eligibility for Department of Public Welfare benefits, and thus may not be reflexive of Plaintiff's abilities for the purposes of determining eligibility for social security. (R. 13). He further noted that the Employability Assessment Form provided "little explanation of the basis of his conclusions." (R. 13). Indeed, this form presents a stark contrast in detail of analysis when compared to Dr. Campbell's report. Dr. Campbell's report consists of six paragraphs outlining his physical examination, including a chest exam, a cardiac exam, an abdomen exam, and an analysis of a Doppler study. (R. 107). He explained the results of his objective tests and his resulting diagnosis of particular disorders. (R. 107). Finally, he provided his conclusion that Plaintiff was incapable of performing jobs requiring climbing or lots of walking, but "could certainly do sedentary work." (Id.). Dr. Siguenza's

---

[2] The ALJ explicitly references the Employment Assessment Form and rejects its findings. He erroneously attributed this opinion to Dr. Todd Samuels instead of Dr. Siguenza. His explanation of the report and his citation to Exhibit 5F clearly demonstrates that he was referring to Dr. Siguenza's report. We find this clerical error entirely immaterial to the ALJ's analysis and our decision to uphold his conclusion.

opinion provides no such analysis or explanation. It consists of a number of form questions and answers. To the question "nature of patient's sickness or injury," Dr. Siguenza responded, "back pain leg pain." (R. 150). To the question "If still disabled, when should patient be able to return to work? Are there limitations," he responded, "Pt. Is still disable [sic]." (Id.). He provides no explanation of any examination or test, or any diagnosis other than back pain and leg pain. Thus, we find the ALJ appropriately afforded greater weight to Dr. Campbell's report because an ALJ is "entitled to place greater reliance on the doctor's full medical opinion than his cursory answers to the interrogatories." Plummer v. Apfel, 186 F.3d 422, 430 (3d Cir. 1999).

Moreover, Dr. Campbell's report is consistent with the other evidence in the record, including Dr. Kosenske's explanation that Plaintiff's complaints of pain are inconsistent with his pathology, and Dr. Leland Patterson's residual functional capacity assessment that Plaintiff is capable of a range of sedentary work. Therefore, we find that the ALJ properly weighed the relative worth of the physician's reports, and his conclusion to accept Dr. Campbell's report is supported by substantial evidence.

**B.     Listed Impairments**

Plaintiff argues that the ALJ erred in concluding that his conditions do not meet or equal the listed impairments for diabetes mellitus and peripheral arterial disease. We find that the ALJ's conclusion is supported by substantial evidence.

Diabetes mellitus is evaluated under section 9.08 of the listings. To satisfy this listing, the disease must be accompanied by:

> A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross

8

>    and dexterous movements, or gain and station (see 11:00C); or
>       B. Acidosis occurring at least on the average of once every 2 months
>    documented by appropriate blood chemical tests (pH or PC02 or bicarbonate
>    levels); or
>       C. Retinitis proliferans; evaluate the visual impairment under the criteria in
>    1.02, 2.03, or 2.04.

Appendix 1, Subpart P of Social Security Regulations No. 4 § 9.08.

The ALJ recognized that Plaintiff has neuropathy, but he does not have sustained disturbances of gain and station or any other attendant finding. Plaintiff argues that he has the requisite significant and persistent disorganization of motor function because his EMG demonstrated that he had neuropathy and he testified that he had a great deal of difficulty walking. We find that substantial evidence supports the ALJ's finding.

Plaintiff's testimony that he had "difficulty walking" does not qualify as significant and persistent disorganization of motor function. The listings provide,

> Persistent disorganization of motor function in the form of paresis
> or paralysis, tremor or other involuntary movements, ataxia, and
> sensory disturbances (any or all of which may be due to cerebral
> cerebella, brain stem, spinal cord, or peripheral nerve dysfunction)
> which occur singly or in various combinations, frequently provide the
> sole impairment depends on the degree of interference with
> locomotion and/or interference with the use of fingers, hands and
> arms.

Appendix 1, Subpart P of Social Security Regulations No. 4 § 11.00©).

Plaintiff has no paralysis or involuntary movements, and the record establishes very little interference with locomotion and certainly contains no evidence of significant and persistent interference with locomotion. Therefore, we overrule Plaintiff's objection.[3]

---

[3] Plaintiff's brief in support of his objections also cites section 4.12 of the listings, which relates to peripheral arterial disease. The ALJ did not address this listing. Plaintiff, however, did not raise this issue before the magistrate, and Plaintiff's brief does not explain how his condition meets or equals this impairment. Thus, we find that Plaintiff cannot appeal this issue to this Court because it was not part of the record of the magistrate's decision. See Local Rule 72.3. However, even had he properly raised this issue we would

9

### C.     **Vocational Expert Testimony**

The ALJ found that Plaintiff was capable of unskilled sedentary work with a sit/stand option every 30 to 60 minutes, requiring no precise attention to detail. (R. 15). Based on this residual functional capacity, Plaintiff's age, education, and past relevant work, the Vocational Expert ("VE") found that Plaintiff could perform a number of jobs that exist in significant numbers both locally and nationally. (R. 16). He testified that Plaintiff could obtain work as: 1) a file clerk because 1,500 jobs are available locally and 47,000 are available nationally; 2) a receptionist because 1,200 jobs are available locally and 41,000 are available nationally; and 3) a general clerical worker because 2,100 are available locally and 82,000 are available nationally. (R. 16). The vocational expert explained that his testimony is essentially consistent with the information contained in the Dictionary of Occupational Titles (DOT). (R. 16).

Plaintiff argues that his testimony conflicts with the DOT and that he in fact is incapable of working as a file clerk, receptionist, or general clerical worker. He observes that the DOT describes the file clerk position as semi-skilled, the general clerical worker as a light exertional job, and the receptionist job as a stock quotation clerk. Thus, he argues that DOT provides that the file clerk and general clerical worker positions exceed his capabilities, and the receptionist job no longer exists in significant numbers because he doubts that a stock quotation clerk position is available given the availability of stock quotes on the internet.

We overrule this objection because it does not relate to any portion of the magistrate's

---

overrule the objection, as he has pointed to no evidence in the record that establishes that Plaintiff's condition meets or equals this impairment.

report and recommendation.  "[W]ritten objections shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." Local Rule 72.3.  The Report and Recommendation makes no proposed finding or recommendation regarding this issue because Plaintiff failed to raise this issue before the magistrate judge, and raises it for the first time on appeal.  Thus, Plaintiff's argument does not relate to a portion of the proposed findings or recommendations, and we find, therefore, that he cannot appeal this issue to us because he failed to raise it before the Magistrate.

Furthermore, even had he properly raised this issue before the magistrate, we find that the ALJ appropriately relied on the testimony of the VE and substantial evidence supports the ALJ's decision in step 5.  Although courts have "expressed concern in cases where there is a conflict between the VE's testimony and the DOT," there is no "'general rule that an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal." Jones v. Barnhart, 364 F.3d 501, 506 n.6 (3d Cir. 2004).  In Jones, the court found that reversal was unwarranted despite some inconsistencies where some jobs identified by the VE were consistent with the DOT and the VE listed the jobs merely as examples.  Id.  Here too, the jobs listed by the vocational expert were merely examples of jobs suitable for Plaintiff.  (R. 218). Furthermore, the vocational expert's testimony was consistent with the DOT regarding the receptionist job.  The DOT section he referred to, § 237.367-046, explains that this is a sedentary unskilled position.  See DOT, *available at*

http://www.occupationalinfo.org/23/237367046.html.[4]  The VE testified that 1,000 of these positions are available locally, and 41,000 are available nationally.  Plaintiff's doubts as to the availability of this position have no basis in the record, as nothing in the record contradicts the VE's calculation.  Furthermore, the VE did not hesitate or equivocate his testimony that Plaintiff can perform jobs that exist in substantial numbers in the economy.  See Boone v. Barnhart, 353 F.3d 203, 209 (3d Cir. 2004) (finding that a conflict between a VE's testimony and the DOT does not necessarily require reversal, but where it conflicts and the VE hesitated in his testimony, the VE's testimony alone is not substantial evidence supporting a finding of non-disability at step 5).  Thus, substantial evidence supports the ALJ's conclusion that Plaintiff can perform jobs that exist in substantial numbers in the national economy.

### D.  Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ's determination that his complaints of pain lacked credibility was erroneous because his complaints were supported by objective medical evidence and the ALJ improperly considered Plaintiff's incentive to remain unemployed to avoid paying child support.  We find substantial evidence in support of his credibility determination.

> An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by subjective evidence. . . . 'While there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself' . . . . Where medical evidence does support a claimant's complaints of pain, the complaints should then be given great weight and may not be

---

[4] Plaintiff argues that a receptionist is a stock quotation clerk because the vocational expert identified section 237.367-046 as corresponding to the receptionist job.  In fact, the appropriate section is 237.367-038.  This section clearly explains that an individual with the residual functional capacity to perform unskilled sedentary work can work as a receptionist, which is consistent with the vocational expert's testimony.

12

>     disregarded unless there exists contrary medical evidence.

Mason v. Shalala, 994 F.2d 1058, 1068 (3d Cir. 1993) (citations omitted).

The ALJ found that the medical evidence established that Plaintiff suffers from a condition that causes back pain. He found, however, that the doctor's reports and objective medical evidence contradicted the magnitude of Plaintiff's complaints. Dr. Kosenske specifically found that "a lot of his pain is not in proportion to the pathology he has." (R. 168). Dr. Campbell found that Plaintiff should exercise and that he "could certainly do sedentary work." (R. 107). Dr. Patterson's residual functional capacity analysis found him only partially credible and concluded that he could perform sedentary work. (R. 147). The ALJ noted that Plaintiff was not fully compliant with his doctor's recommendation to cease smoking and to start exercising. (R. 14). He further observed that Plaintiff's work records revealed that he exaggerated the hours he missed due to his condition. (R. 15). Finally, the ALJ noted that Plaintiff had an incentive to remain unemployed to avoid paying child support payments.

We find a reasonable person might find this evidence sufficient to support the ALJ's credibility determination. The ALJ accepted that Plaintiff had a condition that caused him back pain, but rejected Plaintiff's testimony regarding the extent of the pain. The objective medical evidence supports the conclusion that his pain is not as severe as he claims and he is capable of performing sedentary work.

Similarly, we reject Plaintiff's assertion that the ALJ erred in considering his incentive to avoid paying child support. Plaintiff relies on Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996), which is both non-binding and clearly distinguishable. In Sarchet, the ALJ found the claimant's testimony lacked credibility for a number of reasons, including because she waited until she was no longer eligible for AFDC benefits. Id. at 308. The court found that her delay

13

did not indicate a lack of credibility, but rather was a reflection that "[m]any people are ignorant of the full range of available benefits, or reluctant to undergo arduous administrative proceedings in which they are called liars, until desperation . . . drive them to seek additional information." Id.  The court proceeded to rebuke the ALJ's analysis on the whole, finding an accumulation of numerous errors warranted remand. Id.

Here, the ALJ observed that Plaintiff had an incentive to remain unemployed to avoid paying child support.  While this observation alone would be insufficient evidence to allow a reasonable mind to find Plaintiff's complaints implausible, this was not the ALJ's sole rationale for disbelieving Plaintiff's complaints, but merely one observation considered in conjunction with the objective medical evidence, his doctors opinions, and numerous other factors.  Therefore, we find that the ALJ's credibility determination was supported by substantial evidence.  Accordingly, we will overrule Plaintiff's objections and adopt the Report and Recommendation.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN O. SHELLHAMER, Jr.,** | : | No. 3:04cv1440 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **JOANNE B. BARNHART,** *Commissioner* | : | |
| *of Social Security*, | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 21st day of September 2005, it is hereby **ORDERED** that:

1) Plaintiff's objections to the Report and Recommendation (Doc. 17) are **OVERRULED**;
2) The Report and Recommendation (Doc.17) is hereby **ADOPTED**;
3) The Plaintiff's appeal of the Commissioner's decision (Doc. 1) is **DENIED**; and
4) The Clerk of Courts is directed to close this case.

                                             **BY THE COURT:**

                                             **s/ James M. Munley**
                                             **JUDGE JAMES M. MUNLEY**
                                             **United States District Court**